IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | | |
|---|---|---|
| ROBERT K. ELLIS, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | Civil Action No. 5:11-0096 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Defendant.** | ) | |

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court is the United States' "Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim" (Document No. 26.), filed on September 27, 2012. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to the United States' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the United States in moving to dismiss. (Document No. 28.) On October 25, 2012, Plaintiff filed his Response in Opposition to the United States' Motion to Dismiss. (Document No. 32.) The United States filed its Reply on October 31, 2012. (Document No. 33.) Having examined the record and considered the applicable law, the undersigned has concluded that the United States' "Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim" should be granted.

## FACTUAL AND PROCEDURAL HISTORY

On February 10, 2011, Plaintiff, acting *pro se* and presently in confinement at FCI Beckley, in Beckley, West Virginia, filed a Complaint pursuant to the Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 1346(b) and 2671, *et seq.* and an Application to Proceed *in Forma Pauperis*. (Document

Nos. 1 and 3.) [1] (Document Nos. 1 - 3.) In his Complaint, Plaintiff alleges that the United States acted with negligence in providing dental treatment.[2] (Document No. 3, pp. 2 - 10.) Plaintiff states that on April 13, 2010, he "submitted an Inmate Request to the dental department at the camp complaining that he broke one of his front teeth and that a steel pin remained." (Id., p. 2.) Plaintiff explains that the "steel pin was catching on his lip and causing an amount of pain and discomfort." (Id.) Plaintiff was seen by the dental department on April 29, 2010, to conduct repairs to the broken tooth. (Id.) Plaintiff complains that the repair did not provide a permanent solution, because "the front tooth broke anew, leaving the steel pin as before." (Id.) Plaintiff states that "three hours after my departure from the dentist office the temporary repair broke once again and I was left with the same dilemma I had been facing for weeks prior to the visit." (Id., p. 40.) Between May 4, 2010 and May 25, 2010, Plaintiff alleges that he "submitted three weekly requests informing the dental department of the broken tooth and complaining of pain being inflicted by several others." (Id., p. 2.) Plaintiff states that he approached Counselor Grimes "requesting that he contact the dental department on my behalf." (Id., p. 40.) Plaintiff contends that "as a direct result of Mr. Grimes' intervention, I was seen by the dentist." (Id., pp. 3 and 40.) Plaintiff complains, however, that the dentist "only worked on one tooth despite the pain being inflicted by others." (Id.) Specifically, Plaintiff states that the dentist

---

[1]  Because Petitioner is acting *pro se*, the documents which he has filed are held to a less stringent standard than if they were prepared by a lawyer and therefore construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

[2]  Plaintiff has also complained about the difficulty which he has experienced in obtaining treatment for his dental problems in *Ellis v. Berkebile*, Civil Action No. 5:10-0898, which the Court regarded as filed under *Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619(1971) and the FTCA and dismissed for Plaintiff's failure to exhaust administrative remedies (*Id.*, Document No. 18.), and *Ellis v. Berkebile*, Civil Action No. 5:10-0931, which Plaintiff initiated under 28 U.S.C. § 2241 and the Court dismissed for his failure to exhaust administrative remedies (*Id.*, Document No. 14.).

2

pulled one tooth and "all other issues remained uncorrected." (Id., p. 3.) Plaintiff alleges that he submitted four Inmate Request Forms in June, 2010, requesting dental treatment and antibiotics for his infected teeth. (Id.) Plaintiff asserts that "the aforementioned Inmate Requests were followed by an electronic message from Mr. Ellis to the Warden of the institution, informing him that the dental department stated he would be required to wait at least eight (8) weeks before he could receive treatment on the painful teeth and requesting assistance in obtaining dental relief from the pain." (Id.) Plaintiff alleges that he spoke to Dr. Hughes on July 9, 2010, explaining the pain he was "suffering from the infected teeth," but Dr. Hughes refused to provide any treatment. (Id., pp. 4 and 41.) Plaintiff states that on July 11, 2010, "my counselor informed me that the Informal Resolution was denied, and stated 'that for . . . . about the staff, that I would never see a dentist again as long as I was here.'" (Id.) Plaintiff states that his "teeth continue to be infected, the pin remains in his mouth, and the pain persists." (Id.)

On September 30, 2011, Plaintiff filed his Motion for Permission to File Supplemental Pleading" (Document No. 5.) In support of his Motion, Plaintiff states that he wishes to amend his Complaint for the following reasons: (1) "Plaintiff brings forth supporting evidence on the claim of neglect that shows the resulting injuries of that neglect;" and (2) Plaintiff shows the further continuance of that neglect." (Document No. 5.) As an Exhibit, Plaintiff files a copy of his Amended Complaint. (Document No. 6.)

In his Amended Complaint, Plaintiff alleges the following has occurred  "since the filing of the original complaint:" (1) Plaintiff has filed "6 dental call forms;" (2) "After almost three years of being understaffed, a second dentist has been added to the dental staff;" (3) "Plaintiff has had seven (7) teeth extracted;" (4) "dental department is still behind normal routine care concerning the Plaintiff by at least seven months;" and (5) FCI Beckley "was without a dental hygienist for almost a year."

(Id., pp. 4 - 5.) As Exhibits, Plaintiff attaches the following: (1) A copy of his dental Sick Call Request dated March 8, 2011 (Id., p. 6.); (2) A copy of his dental Sick Call Request dated March 15, 2011 (Id., p. 7.); (3) A copy of his dental Sick Call Request dated March 22, 2011 (Id., p. 8.); (4) A copy of his "Inmate Request to Staff" dated April 12, 2011 (Id., p. 9.); (5) A copy of his "Inmate Request to Staff" dated May 3, 2011 (Id., p. 10.); (6) A copy of his "Inmate Request to Staff" dated June 28, 2011 (Id., p. 11.); (7) A copy of Plaintiff's "Bureau of Prisons Health Services Dental Soap/Admin Encounter" dated March 11, 2011 (Id., pp. 12 - 13.); (8) A copy of Plaintiff's "Bureau of Prisons Health Services Dental Soap/Admin Encounter" dated March 24, 2011 (Id., pp. 14 - 15.); (9) A copy of Plaintiff's "Bureau of Prisons Health Services Dental Soap/Admin Encounter" dated June 28, 2011 (Id., pp. 16 - 17.); (10) A copy of Plaintiff's "Bureau of Prisons Health Services Dental Soap/Admin Encounter" dated July 5, 2011 (Id., pp. 18 - 19.); (11) A copy of Plaintiff's "Bureau of Prisons Health Services Dental Soap/Admin Encounter" dated July 12, 2011 (Id., pp. 20 - 21.); (12) A copy of Plaintiff's "Bureau of Prisons Health Services Dental Soap/Admin Encounter" dated July 19, 2011 (Id., pp. 22 - 23.); (13) A copy of Plaintiff's "Inmate Request to Staff" dated August 9, 2011 (Id., p. 24.); and (14) A copy of Plaintiff's "Inmate Request to Staff" dated July 28, 2011 (Id., p. 25.).

On August 10, 2012, the undersigned granted Plaintiff's Motion to Amend Pleadings. (Document No. 13.) By Order also entered on August 10, 2012, the undersigned determined that Plaintiff's Application to Proceed *in Forma Pauperis* was deficient because the Certificate portion at the end of the Application was not completed. (Document No. 12.) The Court, therefore, ordered that Plaintiff's Application to Proceed *in Forma Pauperis* be returned and that Plaintiff either submit a completed Application or pay the Court's $350.00 filing fee. (Id.) On August 16, 2012, Plaintiff filed his completed Application to Proceed *in Forma Pauperis*. (Document 15.) By Order entered on August 20, 2012, the undersigned granted Plaintiff's Application to Proceed *in Forma Pauperis* and

directed that Plaintiff pay $240 as an initial partial payment of the filing fee. (Document No. 17.) Plaintiff paid the $350 filing fee on September 10, 2012. (Document No. 20.) On September 13, 2012, the Clerk issued process by preparing and serving a Summons and a copy of Plaintiff's Complaint upon the United States as specified in Rule 4(i)(1) of the Federal Rules of Civil Procedure. (Document No. 23.) The Summonses were returned executed. (Document Nos. 24 and 25.)

On September 27, 2012, the United States filed its "Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim" and Memorandum in Support. (Document Nos. 26 and 27.) The United States argues that Plaintiff's Complaint should be dismissed based on the following: (1) "The Court lacks subject matter jurisdiction over the claims in the supplemental pleading" (Document No. 27, pp. 2 - 4.); and (2) "Plaintiff has failed to provide the required screening certificate of merit, and therefore, his Complaint should be dismissed" (Id., pp. 4 - 5.). As Exhibits, the United States attaches the following: (1) A copy of Plaintiff's Standard Form 95 "Claim for Damage, Injury, or Death" (Document No. 26-1.); and (2) A copy of a letter from the U.S. Department of Justice dated September 1, 2010, denying Plaintiff's tort claim (Document No. 26-2.).

On October 25, 2012, Plaintiff filed his Response in Opposition. (Document No. 32.) First, Plaintiff argues that his "Supplemental Pleading did not raise a separate cause of action." (Id., pp. 3 - 5.) Next, Plaintiff argues that his Complaint "should not be dismissed under the MPLA, W. Va. Code § 55-7B-6 whereas (A) the complaint does not allege medical malpractice, (B) the SF-95 form provided sufficient notice of intent and raised a claim that does not require expert medical opinion for resolution, and (C) if the Court should determine that a Certificate of Merit is required, the Plaintiff should be allowed ample time to acquire same." (Id., pp. 5 - 15.)

In Reply, the United States first argues that Rule 15 of the Federal Rules of Civil Procedure does not trump the exhaustion requirements of the FTCA. (Document No. 33, pp. 1 - 2.) Second, the

United States argues that Plaintiff should not be excused from complying with the prefiling notice provisions of the MPLA. (Id., pp. 2 - 3). Finally, the United States claims that "Plaintiff's reliance on an alleged violation of Bureau of Prisons regulations to support his FTCA claim is misplaced." (Id., p. 3.)

## THE STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

## DISCUSSION

A.   *Exhaustion of Administrative Remedies.*

In its Motion to Dismiss, the United States argues that "the Court lacks subject matter jurisdiction over the claims in the Supplemental Pleading." (Document No. 27, pp. 2 - 4.) The United States contends that "[w]hile plaintiff has exhausted his FTCA remedies for the claims made in the

6

administrative tort claim, (ECF No. 3.), no necessary exhaustion has been made for the supplemental claims (ECF Nos. 5, 6.)." (Id., pp. 3 - 4.) The United States notes that Plaintiff's administrative tort claim sought compensation for the BOP's alleged negligence in failing "to timely treat Plaintiff's dental problems during the three month period, April - July 2010." (Id., p. 1.) The United States claims that Plaintiff's Supplemental Pleading alleges "additional negligent acts subsequent to the acts complained of in his administrative claim. These new allegations happened in 2011." (Id., pp. 1 - 2.) The United States, therefore, argues that "the court is without jurisdiction to hear those claims and they should be dismissed." (Id., p. 4.)

In Response, Plaintiff argues that his "Supplemental Pleading did not raise a separate cause of action." (Document No. 32, pp. 3 - 5.) Plaintiff claims that his Supplemental Pleading contains "supporting evidence on the claim of neglect" and "the further continuance of that neglect." (Id., p. 4.) Plaintiff explains that the supplement "further informs and updates the Court of the events concerning and pertaining to her original complaint that ensued after the filing thereof." (Id.) Plaintiff contends that the supplement does not "add any new persons to his complaint," "contain any mention or request for a new compensation or claim," or "raise a separate cause of action." (Id.) Plaintiff, therefore, argues that he is not require to file "another or different administrative remedy other than the one that was presented." (Id., p. 5.)

In Reply, the United States first argues that Rule 15 of the Federal Rules of Civil Procedure does not trump the exhaustion requirements of the FTCA. (Id., pp. 1 - 2.) Second, the United States asserts that "Plaintiff's claim was only properly exhausted for the alleged negligent acts which happened in 2010." (Document No. 33, p. 2.) The United States explains that Plaintiff's "new claims allegedly happened in 2011, while the events alleged in Plaintiff's administrative tort claim happened in 2010 [and] [t]hat claim was denied on September 1, 2010." (Id., p. 1.) The United States notes that

an administrative claim must provide "sufficient factual predicate so that his claim can be investigated." (Id.) The United States contends that the "government could not investigate events which happened in 2011 because plaintiff's claim was denied in 2010." (Id., p. 2.) The United States, therefore, contends that "plaintiff must again exhaust his FTCA administrative remedies for those alleged negligent acts which happened in 2011." (Id.)

The Federal Tort Claims Act is a limited waiver of sovereign immunity. This waiver is subject to the condition that an administrative claim must first be submitted to the appropriate agency and denied before suit can be filed. See 28 U.S.C. § 2675(a).[3] See also Bellomy v. United States, 888 F. Supp. 760 (S.D.W.Va. 1995). Filing a timely administrative claim is jurisdictional and cannot be waived. Ahmed v. United States, 30 F.3d 514, 516 (4th Cir. 1994) (citing Henderson v. United States, 785 F.2d 121, 123 (4th Cir. 1986); Muth v. United States, 1 F.3d 246 (4th Cir. 1993). Thus, before an inmate can bring a claim under the FTCA, the inmate must exhaust procedures specified at 28 C.F.R. §§ 14.1 to 14.115 and 543.30 to 543.32. The administrative process which inmates must exhaust when they have complaints under the FTCA is spelled out at 28 C.F.R. §§ 14.1 - 14.11. To exhaust administrative remedies as required before filing an action under the FTCA, the inmate must first submit an administrative claim including a claim for money damages in a sum certain for the

---

[3] Title 28 U.S.C. § 2675(a) provides as follows:

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

alleged injury sustained on a Standard Form 95 to the Federal agency whose activities gave rise to the claim. Id., § 14.2(a) and (b)(1). After investigation and examination and informal attempts at resolving the inmate's claim as the circumstances may require, Id., §§ 14.6 and 14.8, the agency may deny or approve the inmate's claim. If the agency denies the inmate's claim, he may file suit in the District Court within six months of the mailing of the denial. Id., § 14.9(a). The Director of the Federal Bureau of Prisons is authorized to settle meritorious administrative Federal tort claims by providing monetary compensation. 28 C.F.R. §§ 0.96(k) and 0.172.

Based upon a review of the record, the undersigned finds that Plaintiff failed to properly exhaust his administrative remedies pursuant to the FTCA as to claims of negligence occurring after September, 2010. In his Standard Form 95 (Administrative Claim No. TRT-MXR-2010-05550), Plaintiff claimed he received inadequate dental care beginning in April, 2010, to September, 2010. (Document No. 26-1.) Plaintiff's Administrative Claim was denied by letter dated September 1, 2010. (Document No. 26-2.) Accordingly, Plaintiff properly exhausted his claims as set forth in Administrative Claim No. TRT-MXR-2010-05550. In his Supplemental Pleading, however, Plaintiff alleges that he continued to receive negligent dental treatment after September, 2010. (Document No. 6.) Plaintiff fails to produce any documents indicating that he exhausted his FTCA claim regarding negligent dental treatment occurring after September 1, 2010.[4] Plaintiff appears to argue that he was

---

[4] Exhaustion requirements concerning FTCA and *Bivens* actions differ. *See Davis v. United States*, 2007 WL 3473275 (N.D.W.Va. Nov. 13, 2007); *Murphy v. Inmate Systems Management*, 2008 WL 793631 (S.D.W.Va. Mar. 20, 2008). For *Bivens* purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." *Dale v. Lappin*, 376 F.3d at 655 (internal citations omitted); *also see Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate

not required to exhaust his administrative remedies concerning his new claims because the Court

granted his Motion to Amend. Although the Court granted Plaintiff's Motion to Amend his pleadings

pursuant to Rule 15 of the Federal Rules of Civil Procedure, this does not excuse Plaintiff's failure

to properly exhaust his administrative remedies. Accordingly, the undersigned recommends that the

United States' Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction be granted.

**B.**     ***Failure to satisfy the requirements of the MPLA.***

An inmate "can sue under the FTCA to recover damages from the United States Government

for personal injuries sustained during confinement in a federal prison, by reason of the negligence

of a government employee." United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805

(1963). The FTCA provides at § 2674 as follows:

---

may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. *Id.* Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. *Id.*, § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. *Id.*, § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. *Id.*, § 542.15(a) and (b). If the inmate's Request went initially to the Regional Director, the inmate may appeal an unfavorable response to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. *Id.*, § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. *Id.*, § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. *Id.*, § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. *Id.*, § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. *Id.*, § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. *Id.*, § 542.17(c).

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

The FTCA, however, does not create a new cause of action. <u>Medina v. United States</u>, 259 F.3d 220, 223 (4th Cir. 2001). The statute merely "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." <u>Id.</u>

In the present case, Plaintiff alleges that Defendants' negligent acts occurred in the State of West Virginia. Accordingly, West Virginia State law applies. Under West Virginia law, a plaintiff must satisfy certain prerequisites prior to filing suit against a health care provider. Specifically, a plaintiff must serve each defendant health care provider with a notice of claim with an attached screening certificate of merit executed under oath by a health care provider qualified as an expert under the West Virginia Rules of Evidence at least thirty (30) days prior to filing suit. W. Va. Code § 55-7B-6.[5] Compliance with West Virginia Code § 55-7B-6 is mandatory prior to filing suit in

---

[5] West Virginia Code § 55-7B-6 provides the following in pertinent part:

(a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying the provisions of this section.

(b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each

federal court. Stanley v. United States, 321 F.Supp.2d 805, 806-07 (N.D.W.Va. 2004); also see Starns v. United States, 923 F.2d 34 (4th Cir. 1991)(holding that Virginia's medical malpractice liability cap applies to claims brought against the United States under the FTCA). West Virginia Code § 55-7B-6(c), however, provides that no screening certificate of merit is necessary where "the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care."

Plaintiff alleges that federal employees at FCI Beckley acted with negligence in providing dental treatment. In its Motion to Dismiss, the United States contends that Plaintiff's claim should be dismissed because he failed to timely and properly file a screening certificate of merit pursuant to the MPLA. (Document Nos. 26 and 27.) In Response, Plaintiff first claims that "the complaint does not allege medical malpractice." (Document No. 32, p. 5.) Specifically, Plaintiff states that "his Complaint was not malpractice, but negligence of duty owed to him to provide timely dental care treatment." (Id., p. 16.) Plaintiff explains that his Complaint alleges that "Beckley FCI administration and the dental department were negligent in their duties owed to him, and that said negligence caused him a lengthy and unnecessary amount of pain and discomfort." (Id., pp. 5 - 6.) Second, Plaintiff states that "as an inmate in the custody of the federal BOP, he is unable to acquire medical or dental assistance and that pursuant to the 'Good Samaritan Doctrine,' as set forth under the Restatement (Second) of Torts and codified under West Virginia statute, the Federal BOP owes him a duty of care." (Id., p. 6.) Plaintiff contends that a Certificate of Merit is not required because "the United

health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of Rule 15 of the Rules of Civil Procedure.

States is liable under the 'Good Samaritan Doctrine' as applied to West Virginia, and as such, does not fall under the medical malpractice of the MPLA."  (Id., pp. 7 - 8.) Finally, Plaintiff argues that "the SF-95 form provided sufficient notice of intent and raised a claim that does not require expert medical opinion for resolution." (Id., pp. 8 - 12.) Specifically, Plaintiff states that "[a]s in Johnson v. United States, 394 F.Supp.2d 854, 2005 U.S. LEXIS 26587, the plaintiff's SF-95 alerted the United States of the precise nature of his claim and that they gave him permission to bring suit." (Id., p. 8.) Plaintiff states that his "claims are of an un-complex matter with uncomplicated dental concerns (tooth aches) that most anyone can relate to from experience, and fall within the common knowledge of judges or lay jurors." (Id., pp. 9 - 10.) Plaintiff, therefore, argues that "his SF-95 form and the statements in it, are sufficient to meet the MPLA requirements for notice of claim and in lieu of screening certificate of merit, even thought not labeled as such, and should be able to proceed with this action." (Id., p. 12.)

In the alternative, Plaintiff contends that "if the Court should determine that a Certificate of Merit is required, the Plaintiff should be allowed ample time to acquire same." (Id., pp. 12 - 15.) Plaintiff explains that he "filed his complaint in good faith believing he was accurately following Federal and West Virginia statutes." (Id., p. 12.) Citing Westmoreland v. Vaidya, 664 S.E.2d 90, 96 (W.Va. 2008), Plaintiff argues that a plaintiff's noncompliance with the pre-suit requirements of Section 55-7B-6(b) constitutes a procedural defect which does not warrant a dismissal. (Id., p. 14.) Also citing Giambalvo v. United States, 2012 U.S. Dist. LEXIS 38925 (March 22, 2012), Plaintiff contends that his pro se Complaint should not be dismissed because "he demonstrated 'a good faith and reasonable effort' to comply with the requirements of § 55-7B-6." (Id.)

In Reply, the United States argues that Plaintiff should not be excused from complying with the prefiling notice provisions of the MPLA. (Document No. 33, pp. 2 - 3). The United States asserts

that unlike <u>Westmoreland</u> and <u>Giambalvo</u>, Plaintiff did not file a document "In Lieu of Medical Screening Certificate of Merit." (<u>Id.</u>, p. 2.) The United States further argues that the "Good Samaritan Doctrine" set forth in the "Restatement of Torts (Second) § 323 has not been adopted by the West Virginia Supreme Court of Appeal in a syllabus point, and therefore, has no application to this case." (<u>Id.</u>, pp. 3 - 4.)

Under West Virginia law, "[i]t is the general rule that in medical malpractice cases, negligence or want of professional skill can be proved only by expert witnesses." Syllabus Point 2, <u>Roberts v. Gale</u>, 149 W.Va. 166, 139 S.Ed.2d 272 (1964). Expert testimony, however, is not required "where the lack of care or want of skill is so gross as to be apparent, or the alleged breach relates to noncomplex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and experience." <u>Farley v. Shook</u>, 218 W.Va. 680, 629 S.E.2d 739 (2006). The MPLA provides as follows concerning claims "based upon a well-established legal theory of liability":

> Notwithstanding any provision of this code, if a claimant or his or her counsel, believes that no screening certificate of merit is necessary because the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care, the claimant or his or her counsel, shall file a statement specifically setting forth the basis of the alleged liability of the health care provider in lieu of a screening certificate of merit.

West Virginia Code § 55-7B-6(c). In <u>Johnson v. United States</u>, 394 F.Supp.2d 854, 858 (S.D.W.Va. 2005), the Court held that plaintiff's statement on his administrative claim form alleging improper surgical implantation of a prosthesis satisfied the provisions of the MPLA permitting the filing of a claim without submitting a certificate of merit. <u>Id.</u> The Court reasoned that plaintiff's claim was based upon a well-established legal theory of liability and expert testimony was not required to show a breach of the standard of care because plaintiff stated on his form that the surgeon "implanted the

14

too large Prosthesis backward causing diminished bloodflow and subsequent Necrosis and infection." Id. at 858.

Unlike the facts in Johnson, Plaintiff's allegations of negligence are complex and expert testimony is necessary. See O'Neil v. United States, 2008 WL 906470 (S.D.W.Va. Mar. 31, 2008)(finding that plaintiff was not excused from filing a screening certificate of merit because the treatment and diagnosis of Graves disease, hyperthyroidism, congestive heart failure, and cardiomyopathy, are not within the understanding of lay jurors by resort to common knowledge and experience); also see Giambalvo v. United States, 2012 WL 984277 * 4 (N.D.W.Va. March 22, 2012)(finding that Johnson "is a rare exception to 'the general rule that in medical malpractice cases negligence or want of professional skill can be proved only by expert witnesses.'"). In the instant case, it appears that the dental department at FCI Beckley evaluated and provided treatment such as cavity repair, routine cleaning, and tooth restoration. Plaintiff, however, contends that dental staff provided inadequate and delayed dental treatment, which resulted in "present and future problems with gums and teeth leading to other physical illnesses and conditions." (Document No. 26-1, p. 1.) Expert testimony is necessary to support any finding that the dental treatment provided by the staff at FCI Beckley fell below the applicable standard of care. The undersigned finds that what constitutes timely treatment, risk factors, symptoms, possible side-effects, and appropriate treatment options for cavities, gum disease, and broken teeth, are not within the understanding of lay jurors by resort to common knowledge and experience. Accordingly, Plaintiff is not excused from filing a screening certificate of merit pursuant to West Virginia Code § 55-7B-6(c).

Citing Westmoreland v. Vaidya, 222 W.Va. 205, 664 S.E.2d 90 (2008) and Giambalvo v. United States, 2012 WL 984277 (N.D.W.Va. March 22, 2012), Plaintiff contends that his pro se Complaint should not be dismissed because "he demonstrated 'a good faith and reasonable effort'

15

to comply with the requirements of § 55-7B-6." In <u>Westmoreland</u> and <u>Giambalvo</u>, the courts allowed plaintiffs additional time to fulfill the statutory pre-suit requirements after determining that plaintiffs proceeded in a good faith belief that they could litigate their case under the exception set forth in W. Va. Code § 55-7B-6(c).[6] See <u>Giambalvo</u>, 2012 WL 984277 at 6("Like the plaintiff in *Westmoreland*, Giambalvo has demonstrated 'a good faith and reasonable effort' to comply with the requirements of § 55-7B-6. . . As evidenced by the filing of his document 'In Lieu of Medical Screening Certificate of Merit,' he believed, albeit erroneously, that his claim was based upon a well-established theory of liability that entitled him to rely on the exception in subsection 6(c)."); <u>Westmoreland</u>, 222 W. Va. at 211, 664 S.E.3d at 96("Significantly, we note that from the outset of this case, Dr. Westmoreland proceeded with a belief that he could litigate this case under the exception contained in subsection (c) of the filing requirements."). Unlike <u>Westmoreland</u> and <u>Giambalvo</u>, Plaintiff did not file a document "In Lieu of Medical Screening Certificate of Merit" or allege within his Complaint that his claims fell within the exception set forth in W. Va. Code § 55-7B-6(c). Thus, there is no indication that Plaintiff proceeded in a good faith belief that he could litigate the instant case under the exception set forth in W. Va. Code § 55-7B-6(c). Accordingly, the Court finds that <u>Westmoreland</u> and <u>Giambalvo</u> are inapplicable and Plaintiff is not entitled to additional time to obtain a screen certificate of merit.

Finally, Plaintiff contends that a Certificate of Merit is not required because "the United

---

[6] In *Giambalvo*, plaintiff attached to his Complaint a document entitled "In Lieu of Medical Screening Certificate of Merit. W.Va. Code § 55-7B-6(c)" wherein he argued that a screening certificate of merit was unnecessary. Plaintiff explained that the doctrine of res ipsa loquitur applied.

In *Westmoreland*, plaintiff filed a "Notice of intent to bring suit" stating that he was proving notice "in lieu of a Certificate of Merit due to the fact that the common person would not need to have an expert verify the breach of standard of care." Plaintiff further states that his notification meet the criteria set forth in W. Va. Code § 55-7B-6(c).

States is liable under the 'Good Samaritan Doctrine' as applied to West Virginia, and as such, does not fall under the medical malpractice of the MPLA." (Document No. 32, pp. 7 - 8.) The Court finds the above argument to be without merit. The "Good Samaritan Doctrine" has not been adopted by the West Virginia Supreme Court of Appeal and is inapplicable to this case.

**C.**     ***Warden's Alleged Failure to Comply with Program Statement 4600.02.***

The FTCA contains a number of exceptions, including the discretionary function exception. Plaintiff bears the burden of demonstrating that the discretionary function exception does not apply. Welch v. United States, 409 F.3d 646, 650-51 (4th Cir. 2005); LeRose v. United States, 2006 WL 5925722 * 8 (S.D.W.Va. May 17, 2006)(J. Copenhaver). The discretionary function exception excludes from the FTCA's waiver of sovereign immunity:

> [a]ny claim based upon an action or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the federal agency or an employee of the Government, whether or not the discretion involved be abuse.

28 U.S.C. § 2680(a). Whether the discretionary function exception bars suit against the United States depends upon two factors. See United States v. Gaubert, 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); Berkovitz v. United States, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). First, the conduct at issue must involve "an element of judgment or choice." Berkovitz, 486 U.S. at 536, 108 S.Ct. 1959; also see Williams v. United States, 50 F.3d 299, 309 (4th Cir. 1995). Where there is a mandatory statute, regulation, or policy, there is no discretion, and therefore no exception "because 'the employee has no rightful option but to adhere to the directive.'" Gaubert, 499 U.S. at 322, 111 S.Ct. at 1273(quoting Berkovitz, 486 U.S. at 536, 108 S.Ct. 1954.) Second, if conduct involved an "element of judgment or choice," the Court must determine whether that judgment is of the kind that

the discretionary function exception was designed to shield." <u>Gaubert</u>, 499 U.S. at 322 - 23. "Because the purpose of the exception is to prevent judicial second-guessing of the legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort, when properly construed, the exception protects only governmental actions and decisions based on consideration of public policy." <u>Id.</u> at 323. The focus is on the "nature of the conduct" and not the "status of the actor." <u>See</u> <u>Gaubert</u>, 499 U.S. at 325. Thus, the Court should "look to the nature of the challenged decision in an objective, or general sense, and ask whether that decision is one which we would expect inherently to be grounded in considerations of policy." <u>Suter v. United States</u>, 441 F.3d 306, 310 - 11 (4th Cir. 2006). "When a statute, regulation, or agency guideline permits a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." <u>Id.</u>

First, the Court must consider whether the challenged conduct was discretionary or involved an element of judgment or choice. "Citing Program Statement 6400.02, Plaintiff claims that Warden Berkebile "was negligent in his duty to provide a sufficient number of dentist on staff." Plaintiff complains that FCI Beckley "has well over 2,000 inmates," but only one dentist. 18 U.S.C. § 4042 provides that the BOP shall "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(2). Although the foregoing statute imposes upon the BOP a general duty to care for inmates, the statute does not set forth any specific means of carrying out that duty. Thus, the BOP retains discretion as to how it will fulfill that duty. <u>See</u> <u>Cohen v. United States</u>, 151 F.3d 1338, 1342 (11th Cir. 1998)(Section 4042 gives discretion to the BOP as to the means to comply with the statute.) BOP Program Statement [P.S.] 6400.02, Section 6(a), provides as follows:

**Staffing.** The CDO will be knowledgeable of both Office of Personnel Management

18

(OPM) and U.S. Public Health Service (PHS) personnel systems. The authority to fill positions is held by the institution's Warden based upon requests justifying the need for staffing.

The BOP Chief Dentist will establish staffing guidelines for dental clinics. Generally, each institution should have one dentist for every 1,000 inmates. Staffing guidelines may vary by institution depending on the mission.

P.S. 6400.02. P.S. 6400.02 clearly contains discretionary language. The undersigned finds no mandatory language within P.S. 6400.02 requiring the Warden to hire one dentist for every 1,000 inmates. The challenged conduct involves "an element of judgment and choice." P.S. 6400.02 provides authority to the Warden to fill positions "based upon requests justifying the need for staffing." The Program Statement does not mandate the hiring of one dentist per 1,000 inmates. The Program Statement merely provides that "generally, each institution should have one dentist for every 1,000 inmates." P.S. 6400.02 further notes that "staffing guidelines may vary by institution." Accordingly, the first prong of the discretionary function test is satisfied because the Warden is allowed discretion regarding the filling of dentist positions.

Next, the undersigned will consider whether the judgment is of the kind that the discretionary function exception was designed to shield. As stated above, "[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. Gaubert, 499 U.S. at 324. First, the Court notes that decisions regarding staffing clearly have economic ramifications. Next, it is well established that "[t]he BOP's decisions regarding the hiring, supervision and retention . . . are precisely the type of decisions that are protected under the discretionary function exception." LeRose v. United States, 285 Fed.Appx. 93, 97 (4th Cir. 2008) citing Suter, 441 F.3d at 312, n. 6.; also see Cash v. United States, 2012 WL 6201123 (D.Md. Dec. 11, 2012)(finding that employment decisions fall within the discretionary

19

function exception); <u>Jacocks v. Hedrick</u>, 2006 WL 2850639 * 10 (W.D.Va. Sep. 29, 2006)("The supervisory defendants' decisions regarding . . . staffing of the housing unit also fall within the discretionary function exception). Based on the foregoing, the undersigned finds that the discretionary function exception applies because both prongs of the discretionary function test are satisfied. Accordingly, Plaintiff's above claim should be dismissed for lack of subject matter jurisdiction.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **GRANT** United States' "Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim" (Document No. 26.), **DISMISS** Plaintiff's Complaint (Document Nos. 1 and 6.) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. <u>Snyder v.</u>

Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright

v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.

1984).  Copies of such objections shall be served on opposing parties, Judge Berger and this

Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to

Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: July 31, 2013.

R. Clarke VanDervort
United States Magistrate Judge