## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

ROBERT K. ELLIS,

        Plaintiff,

v.                                            CIVIL ACTION NO.  5:11-cv-00096

UNITED STATES OF AMERICA,

        Defendant.

### MEMORANDUM OPINION AND ORDER

The Court has reviewed Plaintiff's Complaint (Document 3 and 6), the United States' Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim (Document 26), the memorandum in support (Document 27), Plaintiff's Response in Opposition (Document 32), and the United States' Reply. (Document 33.) By Standing Order (Document 4) entered February 10, 2011, this action was referred to the Honorable R. Clarke VanDervort, United States Magistrate Judge, for submission to this Court of proposed findings of fact and recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

On July 31, 2013, the Magistrate Judge submitted his Proposed Findings and Recommendation ("PF&R") (Document 39), wherein he recommended that this Court grant the United States' Motion to Dismiss, dismiss Plaintiff's Complaint, and remove this matter from the docket.  Plaintiff timely filed his objections to the PF&R on August 7, 2013. (Document  41.)

## *FACTUAL AND PROCEDURAL HISTORY*

Magistrate Judge VanDervort's PF&R sets forth in detail the facts and procedural history contained in the parties' motions. The Court now incorporates by reference those facts as well as the procedural history. To provide context for the ruling herein, the Court provides the following summary.

On February 10, 2011, Plaintiff, an inmate at FCI Beckley, acting *pro se,* filed an Application to Proceed *in Forma Pauperis* (Document 1) and a Complaint pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§1346(b) and 2671, *et seq.* (Document 3) alleging that the United States was negligent in providing him dental treatment. (*Id.* at 2-10.) Plaintiff states that on April 13, 2010, he submitted an Inmate Request to the dental department complaining of a broken tooth and a steel pin which "was catching on his lip and causing an amount of pain and discomfort." (*Id.* at 2.) Plaintiff states that the dental department attempted to repair his broken tooth on April 29, 2010. (*Id.*) However, Plaintiff contends that the repair did not provide a permanent solution because his tooth broke again soon thereafter. (*Id.*) Plaintiff states that between May 4, 2010 and May 25, 2010, he "submitted three weekly requests, informing the dental department of the broken tooth and complaining of pain being inflicted by several others." (*Id.*) Plaintiff alleges that the dental department only agreed to see him after he contacted his Unit Counselor. (*Id.* at 3.) During the appointment, Plaintiff contends that the dentist only worked on one tooth despite his complaints of pain in his other teeth. (*Id.*) Plaintiff states that after he submitted four Inmate Request Forms in June 2010, concerning his teeth, he sent an electronic message to the Warden "informing him that the dental department stated he would be required to wait at least eight (8) weeks before he could receive treatment on the painful teeth and requesting

2

assistance in obtaining dental relief from the pain." (*Id.*) Plaintiff alleges that on July 9, 2010, he spoke with FCI Beckley's dentist, Dr. Hughes, about his teeth, but was refused treatment. (*Id.* at 4.) Plaintiff states that on July 11, 2010, he received verbal notice that his Information Resolution was denied and that " 'he would never see the dentist as long as he was here.' " (*Id.* at 3, 41.) Therefore, Plaintiff states that he brought the instant action seeking damages in the amount of $35,000 plus costs of litigation. (*Id.* at 10.)

On September 30, 2011, Plaintiff filed a Motion for Permission to File Supplemental Pleading (Document 5), wherein he moves the Court to allow him to file the supplemental pleading submitted therewith. (Document 6.)[1] In his Supplemental Pleading, Plaintiff alleges that since the filing of the original complaint: (1) he has filed six dental sick call forms; (2) he has had seven teeth extracted; (3) after years of having been understaffed, a second dentist was finally hired; (4) there was no dental hygienist for almost a year; and (5) the dental department is at least seven months behind on his normal routine care, including teeth cleaning. (*Id.* at 4-5.) Plaintiff attaches fourteen exhibits to his Amended Complaint, including copies of various Sick Call Requests, Inmate Requests to Staff, and Bureau of Prisons Heath Services Dental Soap/Admin Encounter forms. (*Id.* at 6-25.)[2]

---

1 On August 10, 2012, Magistrate Judge VanDervort granted Plaintiff's Motion to Amend Pleadings. (Document 13.)
2 The Exhibits include: (1) a copy of Plaintiff's dental Sick Call request dated March 8, 2011 (Document 6 at 6); (2) a copy of Plaintiff's dental Sick Call request dated March 15, 2011 (*Id.* at 7); (3) a copy of Plaintiff's dental Sick Call request dated March 22, 2011 (*Id.* at 8); (4) a copy of Plaintiff's Inmate Request to Staff dated April 12, 2011 (*Id.* at 9); (5) a copy of Plaintiff's Inmate Request to Staff dated May 3, 2011 (*Id.* at 10); (6) a copy of Plaintiff's Inmate Request to Staff dated June 28, 2011 (*Id.* at 11); (7) a copy of Plaintiff's Bureau of Prisons Heath Services Dental Soap/Admin Encounter form dated March 11, 2011 (*Id.* at 12-13); (8) a copy of Plaintiff's Bureau of Prisons Heath Services Dental Soap/Admin Encounter form dated March 24, 2011 (*Id.* at 14-16); (9) a copy of Plaintiff's Bureau of Prisons Heath Services Dental Soap/Admin Encounter form dated June 28, 2011 (*Id.* at 17); (10) a copy of Plaintiff's Bureau of Prisons Heath Services Dental Soap/Admin Encounter form dated July 5, 2011 (*Id.* at 18-19); (11) a copy of Plaintiff's Bureau of Prisons Heath Services Dental Soap/Admin Encounter form dated July 12, 2011 (*Id.* at 20-21); (12) a copy of Plaintiff's Bureau of Prisons Heath Services Dental Soap/Admin Encounter form dated July 19, 2011 (*Id.* at 22-23); (13) a copy of Plaintiff's Inmate Request to Staff dated August 9, 2011 (*Id.* at 24); (14) a copy of Plaintiff's Inmate Request to Staff dated July 28, 2011. (*Id.* at 25.)

On August 10, 2012, Magistrate Judge VanDervort entered an Order of Court Returning Deficient *In Forma Pauperis* Application (Document 12), wherein he found that Plaintiff's application was deficient because the Certificate portion of the application was not completed. (*Id.*) Therefore, he ordered that Plaintiff's Application be returned and that Plaintiff either submit a completed Application to Proceed *in Forma Pauperis* or pay the Court's $350.00 filing fee. (*Id.*) On August 16, 2012, Plaintiff filed his completed Application to Proceed *in Forma Pauperis.* (Document 15.) The Magistrate Judge granted Plaintiff's Application to Proceed *in Forma Pauperis* on August 20, 2012, and ordered him to pay $240.00 as an initial payment of the filing fee within thirty (30) days of the Order. (Document 17.) Plaintiff paid the $350.00 filing fee on September 10, 2012. (Document 20.)

On September 27, 2012, the United States filed its Motion to Dismiss for Lack of Subject Matter Jurisdiction and For Failure to State a Claim (Document 26), attached exhibits, and memorandum in support.[3] (Document 27.) First, the United States argues that the claims in Plaintiff's Supplemental Pleading should be dismissed for lack of subject matter jurisdiction because he has not exhausted his administrative tort remedies with respect to those claims. (Document 26 at 1-2.) Second, the United States argues that both the Complaint and the claims in the Supplemental Pleading should be dismissed for failure to state a claim upon which relief can be granted because Plaintiff did not comply with the provisions of the West Virginia Medical Professional Liability Act ("MPLA"). (*Id.*) The United States stresses that Plaintiff did not provide the United States with a Screening Certificate of Merit. (*Id.*) Accordingly, the United States moves to dismiss the claims in Plaintiff's Supplemental Pleading for lack of subject matter jurisdiction

---

3 The United States' exhibits include: (1) a copy of Plaintiff's Standard Form 95 Claim for Damage, Injury or Death (Document 26-1) and (2) a copy of a letter from the U.S. Department of Justice dated September 1, 2010, denying Plaintiff's tort claim. (Document 26-2.)

4

and dismiss all of the allegations, without prejudice, for failure to state a claim upon which relief can be granted. (*Id.* at 2.)

On October 25, 2012, Plaintiff filed his Response in Opposition (Document 32), wherein he argues that the United States' motion to dismiss should be denied for the following reasons. First, Plaintiff asserts that his supplemental pleading did not raise a separate cause of action, and therefore, he is not required to pursue an additional administrative remedy. (*Id.* at 3-5, 16.) Second, Plaintiff argues that his claim should not be dismissed under the MPLA because he did not allege medical malpractice in his complaint and the SF-95 form provided sufficient notice and does not require a medical expert's opinion for resolution. (*Id.* at 5-12.) Plaintiff also argues that if the Court determines that a Certificate of Merit is required, he should be allowed time to acquire said certificate. (*Id.* at 12-15.)

On October 31, 2012, the United States filed its Reply (Document 33). First, the United States argues that Plaintiff must exhaust his FTCA administrative remedies for the alleged negligent acts that occurred in 2011 because his previous claim was denied in 2010, and therefore, the government did not have an opportunity to investigate those events. (*Id.* at 1-2.) Moreover, the United States asserts that Rule 15 of the Federal Rules of Civil Procedure "does not trump" the FTCA's exhaustion requirements. (*Id.* at 2.) Second, the United States argues that Plaintiff should not be excused from complying with the provisions of the MPLA. (*Id.*) Third, the United States argues that Plaintiff's reliance on an alleged violation of a Bureau of Prisons ("BOP") regulation is misplaced because violations of federal law or regulations "have no place in an FTCA action." (*Id.*) Finally, the United States argues that contrary to Plaintiff's assertion, the Good Samaritan

5

Doctrine has no place in this action because Plaintiff's claims are governed by the MPLA. (*Id.* at 3-4.)

## *STANDARD OF REVIEW*

This Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C). However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed.  *Thomas v. Arn*, 474 U.S. 140, 150 (1985).  In addition, this Court need not conduct a *de novo* review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations."  *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir.1982).  When reviewing portions of the PF&R *de novo,* the Court will consider the fact that Plaintiff is acting *pro se*, and his pleadings will be accorded liberal construction.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir.1978).

## *APPLICABLE LAW*

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly,* 550 U.S. at 570). In the complaint, a plaintiff must "articulate facts, when

6

accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." (*Id.*) (quoting *Twombly,* 550 U.S. at 557).

In reviewing a motion to dismiss, the Court must "accept as true all of the factual allegations contained in the complaint," *Erikson v. Pardus*, 551 U.S. 89, 93 (2007), and "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir.1999). However, the Court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

### DISCUSSION

#### A. The Magistrate's PF&R

The Magistrate Judge found that the United States' Motion to Dismiss should be granted and Plaintiff's Complaint and Supplemental Pleading should be dismissed for three reasons. First, he found that Plaintiff failed to exhaust his administrative remedies with respect to the claims in his Supplemental Pleading which occurred after September 2010. Second, he found that Plaintiff failed to satisfy the requirements of the Medical Professional Liability Act ("MPLA"). Finally, he found that the Warden's alleged failure to comply with Program Statement 4600.02 falls within the discretionary function exception of the FTCA, and therefore, bars suit against the United States.

### i.     *Exhaustion of Administrative Remedies*

The Magistrate Judge found that Plaintiff failed to properly exhaust his administrative remedies pursuant to the FTCA with respect to his claims of negligence occurring after September 2010. (PF&R at 9.) Therefore, he recommended that the Court grant the United States' Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction. (*Id.* at 10.) He noted that the FTCA only waives sovereign immunity, thereby allowing a plaintiff to bring suit, if the administrative claim he submitted to the appropriate agency was denied. (*Id.*) (citing 28 U.S.C. § 2675(a); *Bellomy v. United States,* 888 F.Supp. 760 (S.D.W.Va. 1995) (J. Haden). Title 28 U.S.C. § 2675(a) provides in pertinent part:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a).

The Magistrate explained that before an inmate can file an action under the FTCA, he must exhaust the administrative procedures in 28 C.F.R. §§ 14.1 to 14.11. (*Id.* at 9.) First, he must submit an administrative claim including a claim for money damages in a sum certain for the alleged injury sustained on an executed Standard Form 95 "to the Federal agency whose activities gave rise to the claim." 28 C.F.R. §§ 14.2(a) and (b)(1). That agency may deny or approve the inmate's claim after conducting the required investigation, examination, and informal attempts at resolving the claim. 28 C.F.R. §§ 14.6 and 14.8. If the agency denies the claim, the inmate may file

8

suit in the district court within six months of the mailing of the denial. 28 C.F.R. § 14.9(a). The Magistrate Judge stressed that the timely filing of an administrative claim is jurisdictional, and thus, cannot be waived. (PF&R at 8) (citing *Ahmed v. United States,* 30 F.3d 514, 516 (4th Cir.1994); *Henderson v. United States,* 785 F.2d 121, 123 (4th Cir.1986); *Muth v. United States,* 1 F.3d 246, 249 (4th Cir.1993)).

After reviewing the record, the Magistrate Judge found that Plaintiff did not properly exhaust his administrative remedies under the FTCA for his claims of negligence occurring after September 2010. (PF&R at 9.) He noted that in Plaintiff's Standard Form 95, Plaintiff alleged he received inadequate dental care from April 2010 to September 2010. (*Id.*) (citing Document 26-1.) That claim was denied by letter dated September 1, 2010. (*Id.*) (citing Document 26-2.) Therefore, the Magistrate Judge concluded that Plaintiff did properly exhaust those claims. (*Id.*) However, the Magistrate found that Plaintiff has not produced any documents demonstrating that he exhausted available administrative remedies with respect to his FTCA claim concerning negligent dental treatment occurring after September 1, 2010, and contained in his Supplemental Pleading. (*Id.*) The Magistrate Judge also found, contrary to Plaintiff's assertion, that Plaintiff was not excused from exhausting his administrative remedies simply because the Court granted his Motion to Amend his Pleadings pursuant to Rule 15 of the Federal Rules of Civil Procedure. (*Id.* at 10.) Because Plaintiff did not exhaust his administrative remedies as to the FTCA claims in his Supplemental Pleading, the Magistrate recommended that the Court grant the United States' Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction. (*Id.*)

9

### ii. *Failure to Satisfy the Requirements of the MPLA*

The Magistrate Judge also found that Plaintiff failed to satisfy the requirements of the MPLA. (PF&R at 10-17.) He explained that the FTCA "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the acts occurred." (*Id.* at 11)[4] (quoting *Medina v. United States,* 259 F.3d 220, 223 (4th Cir.2001)). The Magistrate found that because Plaintiff alleges that Defendants' negligent acts occurred in the State of West Virginia, West Virginia State law applies to his claims. (*Id.*) He noted that pursuant to West Virginia Code § 55-7B-6, at least thirty (30) days before filing a medical professional liability action, a plaintiff must serve each defendant health care provider a notice of claim together with a screening certificate of merit. W. Va. Code § 55-7B-6.[5] He stressed that compliance is mandatory and a prerequisite to filing suit in federal court. (PF&R at 11-12) (citing

---

4 28 U.S.C. § 2674 provides that "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages."

5  West Virginia Code § 55-7B-6 provides in pertinent part:

> (a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.
>
> (b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of rule 15 of the rules of civil procedure.

10

*Stanley v. United States,* 321 F.Supp.2d 805, 806-07 (N.D.W.Va. 2004); *Starns v. United States,* 923 F.2d 34 (4th Cir.1991)). However, he noted that pursuant to West Virginia Code § 55-7B-6(c),

> Notwithstanding any provision of this code, if a claimant or his or her counsel, believes that no screening certificate of merit is necessary because the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care, the claimant or his or her counsel, shall file a statement specifically setting forth the basis of the alleged liability of the health care provider in lieu of a screening certificate of merit.

W. Va. Code § 55-7B-6(c).

The Magistrate Judge recognized that under West Virginia Law "[i]t is the general rule in medical malpractice cases, negligence or want of professional skill can be proved only by expert testimony." (PF&R at 14) (quoting Sly Pt. 2, *Roberts v. Gale,* 149 W.Va. 166, 139 S.E.2d 272 (W.Va. 1964)). However, he noted that expert testimony is not required "where the lack of care or want of skill is so gross as to be apparent or the alleged breach relates to noncomplex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and experience." (*Id.*) (quoting *Farley v. Shook,* 218 W.Va. 680, 685, 629 S.E.2d 739, 744 (W.Va. 2006)). For example, the Magistrate Judge noted that in *Johnson v. United States,* 394 F.Supp.2d 854, 858 (S.D.W.Va. 2005) (Chambers, J.), the court found that a certificate of merit was unnecessary because plaintiffs' statement on their administrative claim forms satisfied the requirements of West Virginia Code § 55-7B-6(c). (*Id.*) On their SF-95 forms, Plaintiffs stated that Mr. Johnson's surgeon "implanted the too large [penile] Prosthetic backwards causing diminished bloodflow [sic] and subsequent Necrosis and infection." (*Id.*) Plaintiffs argued that § 55-7B-6(c) applied because their action is based upon a well-established legal theory of liability and an expert is not required to show a breach of the standard of care. (*Id.*) The court noted that Plaintiffs'

11

statements asserting liability based upon a well-established legal theory of liability could serve as notice of a claim under S 55-7B-6(c), and therefore, allowed the claim to proceed without a certificate of merit. (*Id.*)

The Magistrate Judge found that unlike the facts in *Johnson,* Plaintiff's allegations of negligence are complex, and therefore, expert testimony is necessary. (PF&R at 15) (citing *O'Niel v. United States,* 2008 WL 906470 (S.D.W.Va. 2008); *Giamalvo v. United States,* 2012 WL 984277, at *4 (N.D.W.Va. 2012)). He noted that Plaintiff alleges that the dental staff at FCI Beckley provided inadequate and delayed treatment which resulted in "present and future problems with gums and teeth leading to other physical illnesses and conditions." (PF&R at 15) (quoting Document 26-1 at 1.) The Magistrate found that "what constitutes timely treatment, risk factors, symptoms, possible side-effects, and appropriate treatment options for cavities, gum disease, and broken teeth, are not within the understanding of lay jurors by resort to common knowledge and experience." (PF&R at 15.) Accordingly, he found that expert testimony is needed to support any finding that the dental treatment Plaintiff received fell below the applicable standard of care. (*Id.*) Therefore, he concluded that Plaintiff is not excused from filing a screening certificate of merit pursuant to West Virginia Code § 55-7B-6(c). (PF&R at 15.)

Moreover, the Magistrate Judge found that Plaintiff is not entitled to additional time to obtain a screening certificate of merit. (PF&R at 16.) In his Response in Opposition, Plaintiff cited to *Westmoreland v. Vaidya,* 222 W.Va. 205, 664 S.E.2d 90 (W.Va. 2008), and *Giambalvo v. United States,* 2012 WL 984277 (N.D.W.Va. 2012), to support his argument that his complaint should not be dismissed because "he demonstrated 'a good faith and reasonable effort' to comply with the requirements of § 55-7B-6." (Document 32 at 12-15.) The Magistrate noted that the courts

in *Westmoreland* and *Giambalvo* determined that the plaintiffs had proceeded in a goof faith belief that they could litigate their cases under the exception in § 55-7B-6(c), and therefore, allowed them additional time to fulfill the statutory pre-suit requirements. (PF&R at 16.)[6] However, he noted that unlike *Westmoreland* and *Giambalvo*, Plaintiff neither filed a document "in lieu of medical screening certificate" nor alleged in his Complaint that his claims fell within the exception in West Virginia Code § 55-7B-6(c). (PF&R at 16.) Therefore, the Magistrate Judge found that "there is no indication that Plaintiff proceeded in a good faith belief that he could litigate the instant case under the exception set forth in W.Va. Code § 55-7B-6(c)." (PF&R at 16.) Accordingly, he concluded that *Westmoreland* and *Giambalvo* are inapplicable to the instant case and that Plaintiff is not entitled to additional time to obtain a screening certificate of merit. (PF&R at 16.)

Finally, the Magistrate found that Plaintiff's argument that a Certificate of Merit is not required because Defendant is liable under the Good Samaritan Doctrine is without merit. (PF&R at 16-17.) He noted that that doctrine has not been adopted by the West Virginia Supreme Court of Appeals, and therefore, is inapplicable to the instant action. (*Id.*)

### iii.     *Warden's Alleged Failure to Comply with Program Statement 4600.02*

Finally, the Magistrate Judge found that the Warden's alleged failure to comply with Program Statement 4600.02 falls within the discretionary function exemption of the FTCA, and therefore, Plaintiff is barred from bringing suit against the United States on that claim. (PF&R at

---

6 The Magistrate noted that in *Westmoreland,* the plaintiff filed a "Notice of intent to bring suit" "in lieu of a Certificate of Merit due to the fact that the common person would not need to have an expert verify the breach of standard of care." *Westmoreland,* 222 W.Va. at 207-08. He also stated that his Notice meets the requirements set forth in West Virginia Code § 55-7B-6(c). (*Id.*) The Magistrate Judge also noted that in *Giambalvo,* the plaintiff attached a document entitled "In Lieu of Medical Screening Certificate of Merit. W.Va. Code § 55-7B-6(c)" to his Complaint arguing that a screening certificate was unnecessary based upon a well-established theory of liability. *Giambalvo,* 2012 WL 984277, at * 5-6.

17-20.) The Magistrate explained that there are a number of exceptions to FTCA's waiver of sovereign immunity, including the discretionary function exception which excludes:

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

(*Id.* at 17) (quoting 28 U.S.C. § 2680(a)). The Magistrate recognized that the plaintiff bears the burden of showing that the discretionary function exception does not apply. (PF&R at 17) (citing *Welch v. United States,* 409 F.3d 646, 650-51 (4th Cir.2005); *LeRose v. United States,* 2006 WL 5925722, at * 8 (S.D.W.Va. 2006) (J. Copenhaver)).

The Magistrate Judge then noted that the Court must examine two factors in determining whether the discretionary function exception bars suit against the United States. (PF&R at 17) (citing *United States v. Gaubert,* 499 U.S. 315, 322-23 (1991); *Berkovitz v. United States,* 486 U.S. 531, 536-37 (1988)). The first factor focuses on whether the conduct at issue involves "an element of judgment or choice." (PF&R at 17) (citing *Bertkovitz,* 486 U.S. at 536; *Williams v. United States,* 50 F.3d 299, 309 (4th Cir.1995)). The Magistrate Judge noted that there is no discretion, and therefore, no exception, if there is a mandatory statute, regulation, or policy "because 'the employee has no rightful option but to adhere to the directive.'" (PF&R at 17) (quoting *Gaubert,* 499 U.S. at 322.) If the conduct involved an "element of judgment or choice," then the Court must determine "whether that judgment is of the kind that the discretionary function exception was designed to shield." (PF&R at 17-18) (quoting *Gaubert,* 499 U.S. at 322-23).[7] The Magistrate

---

7 The Court in *Gaubert* noted that "[b]ecause the purpose of the exception is to prevent judicial second-guessing of the legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort, when properly construed, the exception protects only governmental actions and decisions based on

14

Judge noted that the Fourth Circuit Court of Appeals has instructed courts to "look to the nature of the challenged decision in an objective, or general sense, and ask whether that decision is one which we would expect inherently to be grounded in considerations of policy." *Suter v. United States,* 441 F.3d 306, 311 (4th Cir.2006.) Importantly, "[w]hen a statute, regulation, or agency guideline permits a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." (*Id.*) (quoting *Gaubert,* 499 U.S. at 324.)

First, the Magistrate Judge found that the challenged conduct involves discretion, and therefore, satisfies the first prong of the discretionary function test. (PF&R at 18-19.) Plaintiff alleges that Warden Berkebile was negligent in "fail[ing] to provide the requisite number of dentists as outlined by Bureau policy [Program Statement 6400.02 6a]" by only employing one dentist for approximately 2,000 inmates. (Document 3 at 8, 18.) The Magistrate Judge examined Program Statement 6400.02, Section 6(a) and found that it provides the Warden with discretion regarding the filling of dentist positions. (PF&R at 18-19.)[8] Statement 6400.02, Section 6(a) provides as follows:

> **Staffing.** The CDO will be knowledgeable of both Office of Personnel Management (OPM) and U.S. Public Health Services (PHS) personnel systems. The *authority* to fill positions is held by the Institution's Warden *based upon requests justifying the need for staffing*.
>
> The BOP Chief Dentist will establish staffing guidelines for dental clinics. *Generally*, each institution *should* have one dentist for every 1,000 inmates. Staffing guidelines *may* vary by institution depending on the mission.

---

considerations of public policy." *Gaubert,* 499 U.S. at 323.
8  The Magistrate Judge also noted that pursuant to 18 U.S.C. § 4042, the BOP shall "provide suitable quarters and provide for safekeeping, care, and subsistence for all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(2). He concluded that because the statute does not set forth any specific means of carrying out that duty, the BOP has discretion in deciding how it will fulfill that duty. (PF&R at 18) (citing *Cohen v. United States,* 151 F.3d 1338, 1342 (11th Cir.1998).

15

P.S. 6400.02. (emphasis added.)

Based upon the language of the Program Statement, the Magistrate Judge found that the Warden has discretion in staffing dentists, and therefore, the challenged conduct involves "an element of judgment and choice." (PF&R at 19.) The Magistrate Judge noted that the Program Statement does not require the Warden to hire one dentist for every 1,000 inmates. (*Id.*) Rather, it provides that "*[g]enerally,* each institution *should* have one dentist for every 1,000 inmates [but] [s]taffing guidelines *may* vary . . . ." P.S. 6400.02. (emphasis added.) Accordingly, the Magistrate Judge found that the first prong of the discretionary function test is satisfied because the Warden is allowed discretion in deciding how many dentists to hire on staff. (PF&R at 19.)

Because the Magistrate Judge found that the challenged conduct involved an "element of judgment or choice," he then considered whether that conduct is "of the kind that the discretionary function exception was designed to shield." (*Id.*) (quoting *Gaubert,* 499 U.S. at 322-23.) After examining the ramifications of the Warden's decisions and case law, the Magistrate Judge concluded that the Warden's decisions regarding staffing dentists fall within the discretionary function exemption. (PF&R at 19-20.)[9] First, he recognized that decisions regarding staffing have economic ramifications. (*Id.*) In other words, the challenged conduct invokes considerations of public policy and the very purpose of the exception. *See, Gaubert,* 499 U.S. at 323. Then, he noted that it is well-established that "[t]he BOP's decisions regarding the hiring, supervision and retention . . . are precisely the type of decisions that are protected under the discretionary function exception." (PF&R at 19) (quoting *LeRose v. United States,* 285 Fed.Appx. 93, 97 (4th Cir.2008)

---

9 The Magistrate Judge also reiterated that "[w]hen a statute, regulation, or agency guideline permits a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Suter,* 441 F.3d at 311.

16

(citing *Suter,* 441 F.3d at 312); *see also, Cash v. United States,* 2012 WL 6201123 (D.Md. 2012); *Jacocks v. Hendrick,* 2006 WL 2850639, at *10 (W.D.Va. 2006) (J. Turk) ("The supervisory defendants' decisions regarding . . . staffing of the housing unit also fall within the discretionary function exemption.") Because both prongs of the discretionary function test are satisfied, the Magistrate Judge found that the discretionary function exception applies. (PF&R at 18-20.) Therefore, he recommended that Plaintiff's claim should be dismissed for lack of subject matter jurisdiction. (*Id.* at 20.)

### B. Plaintiff's Objections

On August 7, 2013, Plaintiff submitted the following "objection" to the Magistrate's PF&R. (Document 41). First, Plaintiff notes that "[J]udge [M]agistrate VanDervort reviewed this case before requesting that a <u>new</u> in forma pauperas application be filed and that the filing fee be paid." (*Id.* at 1.) Then, Plaintiff questions "[i]f there was a 'rule of filing error' why was this not brought to the **pro se** Plaintiff's attention before allowing everything to proceed to this point?" (*Id.*) (alteration in original.) Finally, Plaintiff "requests that the Honorable Judge Berger review the merits of this case in it's [sic] entirety and Grant that this claim proceed. If the Honorable Judge Berger rules that this case be dismissed on the provisions of West Virginia Code 55-7B-6(a)(b), Plaintiff requests that the $350.00 filing fee be refunded." (*Id.*)

### C. Court's Findings

The Court finds that Plaintiff's objections are without merit, and therefore, should be overruled. Plaintiff apparently objects to the Magistrate Judge ordering that Plaintiff either submit a completed Application or pay the $350.00 filing fee (Document 12) when his Complaint had failed to state a claim upon which relief could be granted. Instead of objecting to any finding

in the PF&R, Plaintiff seemingly objects to the Magistrate's failure to advise him of the deficiencies in his Complaint earlier in the proceeding.

The Court notes that Petitioner is acting *pro se,* and thus, has liberally construed his pleadings. *Estelle*, 429 U.S. at 106; *Loe*, 582 F.2d at 1295. However, "[l]iberal construction does not require courts to construct arguments or theories for a *pro se* plaintiff because this would place a court in the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Miller v. Jack,* 2007 WL 2050409, at * 3 (N.D.W.Va. 2007) (citing *Gordon v. Leeke,* 574 F.2d 1147, 1151 (4th Cir.1978)). In other words, a court may not construct legal argument for a plaintiff. *Small v. Endicott,* 998 F.2d 411 (7th Cir.1993). "Moreover, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim currently cognizable in a federal district court." *Miller,* 2007 WL 2050409, at * 3 (citing *Weller v. Department of Social Servs.,* 901 F.2d 387 (4th Cir.1990)).

After careful review and consideration, the Court finds that Plaintiff's objections should be overruled as they "do not direct the Court to a specific error in the Magistrate's proposed findings and recommendations." *Orpiano*, 687 F.2d at 47. Moreover, the Court cannot give Plaintiff legal advice or correct his Complaint for him. *See, Seitzinger v. Reading Hosp. and Medical Center,* 1996 WL 689099, at *2 (E.D.Pa. 1996) ("Neither the Court nor its staff are permitted to give legal advice to litigants or counsel."); *July v. Board of Water and Sewer Com'rs of City of Mobile,* 2013 WL 66646, at *1 (S.D.Ala. 2013) ("notwithstanding plaintiff's potential *pro se* status . . . this Court cannot give him legal advice or act as his *de facto* legal counsel in helping him to perfect any appeal he may wish to pursue.") Magistrate Judge VanDervort considered Plaintiff's Complaint

together with the United States' Motion to Dismiss. He was not required to *sua sponte* dismiss Plaintiff's Complaint when he reviewed it with Plaintiff's Application to Proceed *in Forma Pauperis*. Based upon the foregoing, Plaintiff's objections are overruled.

## *CONCLUSION*

Based upon the findings herein, the Court does hereby **ORDER** that the Magistrate Judge's Proposed Findings and Recommendation (Document 39), granting the United States' Motion to Dismiss for Lack of Subject Matter Jurisdiction and for failure to State a Claim (Document 26) and dismissing Plaintiff's Complaint (Documents 3 and 6), be **ADOPTED** and that Plaintiff's objections to the PF&R (Document 41) be **OVERRULED.**[10] Furthermore, the Court **ORDERS** that the United States' Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim (Document 26) be **GRANTED** and that Plaintiff's Complaint (Documents 3 and 6) be **DISMISSED** and that this matter be **REMOVED** from the Court's docket.

The Court **ORDERS** that any pending motions be **TERMINATED AS MOOT.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: August 30, 2013

*[signature]*
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

---

10 The Magistrate's PF&R cites to Documents 1 and 6 in reference to Plaintiff's Complaint. (PF&R at 20.) However, the Court notes that Document 1 is Plaintiff's first Application to Proceed without Prepayment of Fees and Costs. Document 3 is Plaintiff's Complaint and Document 6 is Plaintiff's Supplemental Pleading.